UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VIDAL WHITLEY,

                              Plaintiff,

                                                           9:15-cv-00377

v.

                                                            (GTS/TWD)

MS. TOURTELOT, JILL
CARVER, AND MS. GRAZANEI,

                              Defendants.
_____

APPEARANCES:                                                  OF COUNSEL:

OFFICE OF RAFAEL E. MUNIZ                 RAFAEL E. MUNIZ, ESQ.
*Attorney for Plaintiff*
65 Broadway, Suite 714
New York, New York 10006

HON. ERIC T. SCHNEIDERMAN               TIMOTHY P. MULVEY, ESQ.
Attorney General of the State of New York       Assistant Attorney General
*Attorney for Defendants*
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT AND RECOMMENDATION

      This civil rights action has been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c). Plaintiff Vidal Whitley, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), has commenced this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights while confined at Mid-

State Correctional Facility ("Mid-State") and Marcy Correctional Facility ("Marcy"). (*See generally* Dkt. No. 1.) Specifically, Plaintiff claims that from November 2013, through January 2014, Defendants Ms. Grazanei ("Grazanei"), a social worker from the Office of Mental Health ("OMH") at Mid-State, Ms. Tourtelot ("Tourtelot"), a "medication subscriber" at Mid-State, and Jill Carver ("Carver"), a psychiatrist at Marcy, denied Plaintiff adequate medical treatment with deliberate indifference to his serious mental health needs in violation of the Eighth Amendment. *Id*.

Currently pending before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 21.) Defendants argue Plaintiff failed to exhaust his available administrative remedies. (Dkt. No. 21-4 at 3-6.[1]) For the reasons that follow, the Court recommends granting Defendants' motion for summary judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was incarcerated in the special housing unit ("SHU") at Mid-State in November, 2013. (Dkt. No. 1 at 1-2.) While housed at Mid-State, Plaintiff claims Grazanei included false information in his file, specifically alleging that Plaintiff was "coming on to her." *Id.* at 2. Plaintiff alleges Tourtelot told him that "as a punishment for coming on to [her] staff," she would not give Plaintiff his mental health medication and "would fix the paperwork to say [Plaintiff] refused [his] medication 4 times." *Id*. at 3-4. According to Plaintiff, he suffers from bipolar depression and antisocial personality disorder, and was denied medical care by Grazanei and Tourtelot in the weeks leading up to his transfer from Mid-State to Marcy. *Id.*

Plaintiff was transferred to Marcy on December 2, 2013. *Id.* at 4. While at Marcy, Plaintiff received his medication every day "for weeks," until he attended a mental health call-

---

[1] Page references to documents identified by docket number are to the page number assigned by the Court's CM/ECF electronic docketing system.

out with Carver. *Id.* According to Plaintiff, while attending that mental health call-out, Carver told Plaintiff she knew what he did to Grazanei, that Tourtelot was a good friend of hers, and, in support of Tourtelot's decision, she was "restopping [his] medication indefinitely." *Id.* at 4-5.

Thereafter, a corrections officer heard about Plaintiff's problem and ordered Plaintiff to see a doctor. *Id.* at 5. Plaintiff claims Carver prevented the visit and, as a result, Plaintiff did not receive his medication for a number of weeks while housed at Marcy. *Id.* Plaintiff was subsequently transferred to Gouverneur Correctional Facility ("Gouverneur"). *Id.* at 6. While at Gouverneur, a nurse realized Plaintiff's OMH status was changed from "Level 2" to "Level 6" in one day, which is "not how that process works." *Id.*

On March 30, 2015, Plaintiff, *pro se*, commenced this action against nineteen defendants, alleging numerous violations of his civil rights while confined at Mid-State, Marcy, Fishkill Correctional Facility, Clinton Correctional Facility, and Southport Correctional Facility. (*See generally* Dkt. No. 1.) Plaintiff's application to proceed *in forma pauperis* was granted on August 26, 2015. (Dkt. No. 11 at 1.) Upon initial review, the Court determined only Plaintiff's Eighth Amendment medical indifference claims against Tourtelot, Carver, and Grazanei required a response. *Id*. at 1-2, 15, 18. The Court *sua sponte* dismissed all other claims asserted by Plaintiff, and expressly provided Plaintiff with an opportunity to seek to amend his complaint if he believed that the Court had inadvertently omitted a valid, non-duplicative claim. *Id.* at 16-18, 17 n.7. Plaintiff never sought leave to amend his complaint, and the deadline for doing so expired February 19, 2016. (Dkt. No. 20 at 4.)

Defendants have now moved for summary judgment based upon Plaintiff's failure to exhaust available administrative remedies before commencing this action. (Dkt. No. 21-4 at 3-6.) Plaintiff, now represented by counsel, has opposed Defendants' motion arguing that the

administrative remedies were "unavailable." (Dkt. No. 33.) Defendants have filed a reply. (Dkt. No. 36.)

## II. APPLICABLE LEGAL STANDARD

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 273 (citations omitted). The nonmoving party must do more than "rest upon the mere allegations . . . of [the plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (citation and internal quotation marks omitted).

In *Jeffreys v. City of New York*, the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." 426 F.3d 549, 554 (2d Cir. 2005) (emphasis in original). To defeat summary judgment, nonmoving parties "may not rely on conclusory allegations or unsubstantiated speculation." *Id*. (citation and internal quotation marks omitted). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *Id*. (citation and internal quotation marks omitted). Statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

## III. ANALYSIS

Defendants argue summary judgment must be granted because Plaintiff has failed to comply with the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995 ("PLRA"). (Dkt. No. 21-4.) The Court agrees.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2013). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA's exhaustion

requirement is mandatory, thus "foreclosing judicial discretion." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (2016).

In order to properly exhaust available administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In New York state prisons, DOCCS has a well-established three-step Inmate Grievance Program ("IGP"). N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013).

Generally, the DOCCS IGP involves the following procedure for the filing of a grievance. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id*. § 701.5(a). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id*. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance and issues a written decision within two working days of the conclusion of the hearing. *Id*. § 701.5(b)(2), (3). If an inmate alleges harassment by a DOCCS employee, the inmate's grievance may be sent directly to the facility's superintendent, thereby bypassing the first step. *Id*. § 701.8(b)-(d), (f).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are

forwarded directly to the Central Office Review Committee ("CORC") for a decision under the applicable third step of the process. *Id*. § 701.5(c)(3)(I).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. § 701.5(d)(1)(I). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii).

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 93.

Here, the record establishes Plaintiff has failed to exhaust his administrative remedies. In support of their motion, Defendants submit the declaration of Jeffrey Hale, Assistant Director of the IGP for DOCCS. (Dkt. No. 21-2.) As the Assistant Director, Hale is the custodian of records maintained by CORC. *Id*. at ¶ 2. Hale noted that after conducting a diligent search of the computer database maintained by CORC, Plaintiff did not submit any grievances to CORC alleging that OMH and DOCCS medical staff denied him treatment at Mid-State and Marcy in December, 2013. *Id*. at ¶ 10. Further, Hale declared that there is no record of an administrative appeal submitted by Plaintiff from the denial of a grievance regarding complaints that his civil rights were violated by OMH and DOCCS medical staff at Mid-State and Marcy in December, 2013. *Id*. at ¶ 11.

A prisoner's failure to exhaust, however, does not end the review. For more than ten years, courts in this district have been guided by the Second Circuit's decision in *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004). Under *Hemphill*, the Second Circuit established a three-part inquiry to determine whether, *inter alia*, a plaintiff's failure to exhaust available

administrative remedies could nevertheless be justified by "special circumstances." *Hemphill*, 380 F.3d at 686.[2]

However, in *Ross v. Blake*, the Supreme Court rejected the "special circumstances" exception applied by many circuits, holding "[c]ourts may not engraft an unwritten 'special circumstance' onto the PLRA's exhaustion requirement." *Ross*, 136 S. Ct. at 1862; *see Williams v. Corr. Officer Priatno*, ___ F.3d ___, No. 14-4777, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016) ("[T]o the extent that our special circumstances exception established in *Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), and *Hemphill*, 380 F.3d at 689-91, permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, *in fact*, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*.") (emphasis in original).

Thus, "post-*Ross*, the lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are 'available' to him." *Mena v. City of New York*, No. 13-cv-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) (citing *Ross*, 136 S. Ct. at 1862). To guide courts in this analysis, the Supreme Court identified three kinds of circumstances in which an administrative remedy, "although officially on the books," is not "available." *Ross*, 136 S. Ct. at 1859.

First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally,

---

[2] Generally, the "special circumstances" exception was applied where a prisoner has been threatened with physical retaliation for exhausting administrative remedies or where the prisoner reasonably misinterpreted the statutory requirements of the appeals process. *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004).

an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Here, Plaintiff argues the inmate grievance process was "unavailable" because he was transferred from one facility to another. (Dkt. No. 33 at 3.) However, the availability of administrative remedies is not affected by inmate transfers. Indeed, the regulations direct an inmate to file a grievance "at the facility where the inmate is housed even if it pertains to another facility." 7 N.Y.C.R.R. §701.5(a)[1]. Thus, Plaintiff's contention that his transfer from Mid-State to Marcy on December 2, 2013, rendered his administrative remedies unavailable is without merit.

In the alternative, Plaintiff argues "special circumstances" exist which would justify his failure to exhaust available administrative remedies. (Dkt. No. 33-1 at 6.) Specifically, Plaintiff alleges that "[b]ased on [his] medical history, the deliberate discontinuance of his [prescribed psychiatric] medication by mental health professionals could have reasonably contributed to his lack of clarity with respect to DOCS [sic] procedures." *Id*. Accordingly, Plaintiff argues that his mental state "could be construed as a special circumstance which justified his failure to exhaust administrative remedies." *Id*. Plaintiff's alternative argument is also without merit because the Supreme Court has squarely rejected the "special circumstances" exception to administrative exhaustion. *Ross*, 136 S. Ct. at 1859.[3]

In light of the above, Plaintiff has failed to exhaust his available administrative remedies regarding his purported lack of medical care at Mid-State and Marcy.

---

[3] In any event, Plaintiff's conclusory and speculative allegations regarding his "lack of clarity" are insufficient to create a genuine issue of material fact. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998); *Smith v. Rosati*, No. 9:10-CV-1502 (DNH/DEP), 2013 WL 1500422, at *12 (N.D.N.Y. Feb. 20, 2013) ("Mere conclusory allegations that are unsupported by any record evidence are insufficient to give rise to a genuine dispute of material fact.").

9

**ACCORDINGLY** it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 21) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: August 3, 2016
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge